UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

SALU, INC., a Delaware corporation,

      Plaintiff,

  v.

THE ORIGINAL SKIN STORE, an Arizona limited liability company,

      Defendant.
_____/

NO. CIV. S-08-1035 FCD/KJM

MEMORANDUM AND ORDER

----oo0oo----

    This matter comes before the court on defendant The Original Skin Store's ("TOSS") motion to dismiss for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(d) with respect to plaintiff's trademark registration No. 3,087,484 (the "484 trademark") and on defendant's first affirmative defense of fraud on the United States Patent and Trademark Office ("USPTO"). Plaintiff Salu, Inc. ("Salu") opposes the motion. For the

reasons set forth below,[1] TOSS' motion for partial summary judgment is DENIED.

## BACKGROUND[2]

Plaintiff Salu, dba SkinStore, owns and operates the website www.SkinStore.com, through which it has advertised and sold a variety of skin care and related products since 1997. (Compl., filed May 9, 2008, ¶ 7.) Defendant TOSS has been using THE ORIGINAL SKIN STORE as a trademark continuously since February 2004. (UF ¶ 19.) Plaintiff was not aware of TOSS until January 2008. (UF ¶ 27.)

On August 26, 1998, Brainbow, Inc. ("Brainbow") filed a trademark application for the two-word mark, SKIN STORE. (UF ¶ 1.) In a response dated January 21, 1999, the trademark examiner issued an office action refusing to allow registration upon the Principal Register, in part, because the two-word mark was merely descriptive as it immediately named a feature of the services. (UF ¶ 1.) On July 21, 1999, Brainbow amended the application to register the two-word mark on the Supplemental Register; the mark was registered on May 30, 2000 as Trademark No. 2,354,182. (UF ¶ 1.) In 2001, Salu acquired the rights to the two-word mark, SKIN STORE, by assignment. (UF ¶ 1.)

On May 2, 2005, Salu filed a trademark application for the one-word mark, SKINSTORE. (UF ¶ 2.) The application claimed

---

[1]  Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. L.R. 230(g).

[2]  Unless otherwise noted, the facts herein are undisputed. (See Pl.'s Response to Stmt. Of Undisputed Facts ("UF"), filed Mar. 12, 2010.)

ownership of the SKINSTORE mark and provided that "[the] mark has become distinctive of the goods/services through applicant's substantially exclusive and continuous use in commerce for at least the five year immediately before the date of this statement." (UF ¶ 2.) The applicant's claim of substantially exclusive use is made under declaration that all statements made on either knowledge or information and belief are true statements. (UF ¶ 2.) Salu's registration for the one-word mark, SKINSTORE, issued on May 2, 2006, Registration No. 3,087,484. (Ex. 2 to UF.)

Prior to its trademark application in 2005, Salu sent communications to Eternal Skin Care, Inc. ("ESC") of Vancouver, British Columbia, regarding its use of ESKINSTORE. (See UF ¶¶ 3-4.) In a letter dated April 10, 2003, Salu claimed a trademark right in the one-word mark, SKINSTORE, and referred to the registration of the two-work mark, SKIN STORE, on the supplemental register. (UF ¶ 3.) Salu asserted that ESC's use of ESKINSTORE was infringement because it was being used in commerce and was confusingly similar to SKINSTORE. (UF ¶ 3.) On July 19 and 20, 2004, Salu sent additional communications via email and federal express, further alleging use in commerce and intentional infringement and demanding a response within two weeks. (UF ¶ 4.) Salu threatened that it would take action if it did not receive a reply. (UF ¶ 4.)

On August 11, 2004, Salu sought recourse against the use of the term ESKINSTORE through the Uniform Domain Name Dispute Resolution Policy ("UDRP"), a method administered by the Internet Corporation for Assigned Names and Numbers ("ICANN"). (UF ¶ 5.)

3

Salu chose to use the World Intellectual Property Organization ("WIPO") Arbitration and Mediation Center. (UF ¶ 5.) Salu alleged that the use of www.eskinstore.com, which was registered on October 30, 2001, causes consumer confusion. (UF ¶¶ 6-7.)

On October 6, 2004, the WIPO panel issued a decision refusing to find a clear case of cybersquatting. (Ex. 4 to UF at 8.) Specifically, while the panel found "that the Domain name is confusingly similar to a service mark in which the [Salu] has rights," it concluded that there was insufficient evidence of bad faith and actual confusion. (Id. at 5-6.) The panel also noted that ESC "may be infringing" upon Salu's rights, but that the Panel was "not competent to assess the issue under US law." (Id. at 6.) As such, the panel declared that it "is of the view that this is the sort of dispute which would be better decided by a Court rather than by way of the UDRP." (Id. at 8.)

Salu disagreed with the panel's decision and considers ESKINSTORE to be "severely infringing" on its mark. (Ex. 5 to UF at 80:6.) Salu asserts that since the decision of the WIPO panel, it has been continually trying to discern who the owners of ESKINSTORE are and where they are located; it plans to take additional action once it gains this information. (Id. at 78:19-22).

Salu presents evidence that is has continually contacted anyone who it feels is infringing in order to protect its mark. (Id. at 116:23-25.) It has sent out over 300 cease and desist letters to alleged infringers in the last couple of years alone. (Id. at 116:14-15.) Salu claims that with the exception of ESKINSTORE, this litigation, and one other case that settled out

4

of court, "every other infringer receives [the] letter and stops infringing on [the] trademark." (UF ¶ 17.)

Salu claims that it was not required, nor asked, by the USPTO, to submit evidences of uses that were either inconsequential or infringing. (UF ¶ 21.) The USPTO never requested additional evidence of acquired distinctiveness during the prosecution of Salu's May 2, 2005 application for the one-word mark, SKINSTORE. (UF ¶ 28.) Salu maintains that it is a senior user of the SKINSTORE term above all others. (UF ¶ 21.)

On May 9, 2008, plaintiff filed a complaint against TOSS in the Eastern District of California, alleging federal claims for trademark infringement and cybersquatting and a state law unfair business practice claim based upon the same conduct. (Compl. ¶¶ 16-32.)

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998). The evidence must be viewed in the light most favorable to the nonmoving party. See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party fails to meet this burden, "the nonmoving party has no obligation to

produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. See Nissan Fire & Marine, 210 F.3d at 1107. Instead, through admissible evidence the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

**ANALYSIS**

Defendant TOSS contends that plaintiff Salu's registration of the one-word mark, SKINSTORE, should be cancelled because it was procured by fraud. Specifically, defendant contends that Salu made a knowingly false representation of a material fact by stating that it had substantially exclusive use of the SKINSTORE mark for five years prior to the declaration in support of registration.

A third party may petition to cancel a registered trademark on the ground that the "registration was obtained fraudulently."

15 U.S.C. § 1064(3); In re Bose Corp., 580 F.3d 1240, 1243 (Fed. Cir. 2009). "Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application." Bose, 580 F.3d at 1243 (quoting Torres v. Cantine Torresella S.r.l., 808 F.2d 46, 48 (Fed. Cir. 1986).

A party seeking cancellation of a trademark registration based upon fraudulent procurement "bears a heavy burden." Id. Such fraud must be demonstrated by clear and convincing evidence. Id. "There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." Id. (quoting Smith Int'l, Inc. v. Olin Corp., 209 U.S.P.Q. 1033, 1044 (T.T.A.B. 1981)).

The party seeking cancellation must identify a deliberate attempt by the registrant to mislead The Patent & Trademark Office (the "PTO"). Halo Mgmt., LLC v. Interland, Inc., 308 F. Supp. 2d 1019, 1031 (N.D. Cal. 2003). "Merely making a false statement is not sufficient to cancel a mark." L.D. Kichler Co. v. Davoil, Inc., 192 F.3d 1349, 1351 (Fed. Cir. 1999). The party must point to statements of representations that demonstrate more than mere error or inadvertence. Halo Mgmt., 308 F. Supp. 2d at 1031. Importantly, there is "a material legal distinction between 'false' representation and a 'fraudulent' one, the latter involving an intent to device, whereas the former may be occasioned by a misunderstanding, an inadvertence, a mere negligent omission, or the like." Bose, 580 F.3d at 1243 (quoting Kemin Indus., Inc. v. Watkins Prods., Inc., 192 U.S.P.Q. 327, 329 (T.T.A.B. 1976)). "Deception must be willful to

7

constitute fraud." Id.  "[B]ecause direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence." Id. at 1245 (quoting Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1366 (Fed. Cir. 2008)) (noting that the "involved conduct, viewed in light of all the evidence must indicate sufficient culpability to require a finding of intent to deceive").[3]

Under § 2(f) of the Lanham Act, prima facie evidence of distinctiveness includes "proof of substantially exclusive and continuous use" of a mark for five years.  15 U.S.C. § 1052(f). However, "[t]he five years of use does not have to be exclusive, but may be 'substantially' exclusive.  This makes allowance for use by others which may be inconsequential or infringing and which therefore does not necessarily invalidate the applicant's claim." L.D. Kichler Co., 192 F.3d at 1352.  Accordingly, evidence of "use by others is insufficient to preclude an applicant's declaration of 'substantially exclusive' use." Id. (citing Yamaha Int'l Corp. v. Hoshino Gakki Co., 840 F.2d 1572, 1583 (Fed Cir. 1988) (affirming board's rejection of section 2(f) opposition, in spite of evidence that four other companies made similar products prior to registration)).

In this case, defendant has failed to meet its heavy burden of establishing plaintiff's intent to deceive the USPTO through

---

[3] The party seeking cancellation must then demonstrate that misstatements were made with respect to a material fact. Halo Mgmt., 308 F. Supp. 2d at 1031.  A material fact is "one that would have affected the PTO's action on the applications." Id. (quoting Orient Express Trading Co. v. Federated Dep't Stores, Inc., 842 F.2d 650, 653 (2d Cir. 1988).  Because plaintiff has demonstrated triable issues of fact regarding the intent to defraud, the court does not reach this second inquiry.

its declaration of five years of "substantially exclusive" use. Defendant relies primarily on the WIPO decision, in which the panel concluded that it did not have sufficient evidence to establish a clear case of cybersquatting. While defendant contends that the WIPO decision is evidence of substantial, non-infringing by ESC, such contention is belied by the actual findings made by the panel. The panel expressly noted that it was not competent to assess an infringement action under US law and that the dispute was one better decided by a court. The panel pointedly did not decide that ESC's use was non-infringing. As such, the failure of plaintiff to disclose the WIPO decision or ESC's use of the mark does not demonstrate willful deception by clear and convincing evidence.

Further, plaintiff presents evidence that it has been active in preventing third parties from using the mark through the use of cease and desist letters. Indeed, plaintiff presents evidence that in all but three circumstances, including this litigation, the cease and desist letters resulted in the third party's discontinued use of the mark. As such, defendant's evidence of other third party's use of the mark is insufficient to support a finding by clear and convincing evidence that plaintiff committed fraud upon the USPTO.[4]

---

[4] Defendant cites the non-precedential opinion of the Trademark Trial and Appeal Board ("TTAB") in In re Pro Bono Institute, 2008 WL 3211814 (T.T.A.B. July 22, 2008), to support its assertion Salu should have provided evidence that any third party use was inconsequential or infringing. However, the facts of this case are distinguishable from the facts before the TTAB. First, in In re Pro Bono, the applicant challenged the denial of registration. In this case, the USPTO has already registered the
(continued...)

**CONCLUSION**

Accordingly, for the foregoing reasons, defendant's motion for partial summary judgment is DENIED.

IT IS SO ORDERED.

DATED: April 12, 2010.

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

[4](...continued)
mark at issue.  Second, in <u>In re Pro Bono</u>, the TTAB held that the mark was highly descriptive and thus, "a mere statement of five years of use is insufficient to establish acquired distinctiveness."  In this case, the USPTO did not make a finding that the mark at issue was highly descriptive and did not require additional evidence of acquired distinctiveness.  Accordingly, while Salu may have chosen to provide more evidence that third party uses were inconsequential or infringing, defendant has failed to cite any authority that it was required to do so.